ATTORNEY AT LAW
Toni Meacham, WSBA No. 35068
1420 Scooteney Road
Connell, WA 99326
T: 509-488-3289
E: tonipierson@rocketmail.com

VAN NESS FELDMAN LLP
Duncan M. Greene, WSBA No. 43178*
James P. Grifo, WSBA No. 45192*
1191 Second Avenue, Suite 1800
Seattle, WA 98101
T: 206-623-9372
E: dmg@vnf.com; jgrifo@vnf.com

THE LAW OFFICE OF NICHOLAS POWER
Nicholas Power, WSBA No. 45974*
3660 Beaverton Valley Rd.
Friday Harbor, WA 98250
T: 360-298-0464
E: nickedpower@gmail.com

*Admissions Forthcoming

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WADE and TERESA KING; d/b/a KING RANCH,<br><br>               Plaintiffs,<br>   v.<br><br>HILARY FRANZ, in both her personal capacity and her official capacity as Commissioner of Public Lands, STATE OF WASHINGTON DEPARTMENT OF | No.<br><br>COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND MONETARY DAMAGES<br><br>**JURY DEMAND** |

COMPLAINT - 1

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

1  NATURAL RESOURCES ("DNR"); TODD
   WELKER, Deputy Supervisor of State
2  Uplands for DNR, in his personal capacity
   only; RHETTA CYPERT, Southeast Region
3  Agriculture Program Manager for DNR, in
   her personal capacity only; LAURA
4  WATSON, in both her personal capacity and
   her official capacity as Director, STATE OF
5  WASHINGTON DEPARTMENT OF
   ECOLOGY ("Ecology"); JEREMY SIKES,
6  in both his personal capacity and his official
   capacity as investigator and Section Manager,
7  Eastern Regional Office, for Ecology;
   ROBERT FERGUSON, in both his personal
8  capacity and his official capacity as
   ATTORNEY GENERAL of the STATE OF
9  WASHINGTON ("AGO"); COURTNEY
   BLACKBURN, Deputy Attorney General for
10 AGO, in her personal capacity only; and,
   ROBERT GRANT, Deputy Attorney General,
11 in his personal capacity only.

12                              Defendants.

13

14

15

16            **I.    NATURE OF THE ACTION**

17      1.      Plaintiffs, Wade and Teresa King d/b/a King Ranch ("the Kings" or

18 "King Ranch"), by and through their attorneys, James P. Grifo and Duncan Greene

19 of Van Ness Feldman LLP, Nicholas Power of the Law Office of Nicholas Power,

20 PLLC, and Toni Meacham, Attorney-at-Law, bring this action seeking declaratory

21 and injunctive relief from the above-named Defendants' unlawful conduct and

22 monetary relief for damages caused by Defendants' conduct, and hereby allege as

23

24

25

COMPLAINT - 2

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

1366244

follows:

2.     The Kings bring this action pursuant to the Civil Rights Act of 1871, 42 U.S.C §1983, which prohibits Defendants from acting under color of state law to proximately cause the deprivation of the Kings' constitutionally guaranteed rights. As described below, the Kings' rights that have been deprived include, without limitation, their private property rights, including the right to compensation for a taking of private property; their rights to due process without double jeopardy or forced self-incrimination and other substantive and procedural due process rights; their free speech rights; their rights to petition the government for redress of grievances and to legally assemble; rights to privacy and freedom from unreasonable governmental intrusions, searches, seizures, and excessive fines; rights to counsel and to remain silent; and rights to equal protection under the law.

3.     As described below, Defendants have repeatedly violated the Kings' constitutional rights, and Defendants' violations of the Kings' rights are continuing and ongoing in nature.  The individual and concerted actions, failures to act, and other conduct of the Defendants, including past, present, ongoing, and continuing conduct, have proximately caused the Kings to suffer damages that are also ongoing and continuing in nature.  The Kings seek declaratory relief, preliminary and permanent injunctive relief, and other equitable relief as needed to confirm and

COMPLAINT - 3

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

protect the Kings' rights and to restrain the Defendants' illegal conduct. The Kings also seek economic and non-economic damages, both accrued and ongoing, in an amount to be determined at trial, but currently estimated to be in excess of thirty million dollars ($30,000,000.00). The Kings further request a trial by jury.

## II.    PARTIES

4.    The Kings own certain real property, and lease certain real property from DNR, in Grant and Douglas counties, Washington. The Kings are citizens of the United States and residents of the State of Washington.

5.    Defendant HILARY FRANZ ("Franz") is being sued herein as an individual and supervisory defendant, in both her personal capacity (as to economic and non-economic damages) and her official capacity (as to declaratory and injunctive relief), as the Commissioner of Public Lands for the State of Washington and chief executive of the STATE OF WASHINGTON DEPARTMENT OF NATURAL RESOURCES ("DNR"), which is an executive agency of the STATE OF WASHINGTON (collectively referred to as "the State").

6.    Defendant ROBERT FERGUSON ("Ferguson") is being sued herein as an individual and supervisory defendant, in both his personal capacity (as to economic and non-economic damages) and his official capacity (as to declaratory and injunctive relief) as the current Attorney General for, and chief executive of, the

COMPLAINT - 4

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

ATTORNEY GENERAL'S OFFICE OF THE STATE OF WASHINGTON ("AGO") (as well as the governor-elect of the State of Washington).

7.    Defendant LAURA WATSON ("Watson") is being sued herein as an individual and supervisory defendant, in both her personal capacity (as to economic and non-economic damages) and her official capacity (as to declaratory and injunctive relief) as Director of the STATE OF WASHINGTON DEPARTMENT OF ECOLOGY ("Ecology"), which is an executive agency of the State of Washington.

8.    Defendant TODD WELKER ("Welker"), DNR's Deputy Supervisor of State Uplands, is being sued herein as an individual and supervisory defendant, in his personal capacity only (as to economic and non-economic damages).

9.    Defendant RHETTA CYPERT ("Cypert"), DNR's Southeast Region Agriculture Field Program Manager, is being sued herein as an individual and supervisory defendant in her personal capacity only (as to economic and non-economic damages).

10.    Defendant JEREMY SIKES ("Sikes"), Ecology's Investigator and Section Manager, Eastern Regional Office, is being sued herein as an individual and supervisory defendant in his personal capacity only (as to economic and non-economic damages).

COMPLAINT - 5

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

11.    Defendant COURTNEY BLACKBURN ("Blackburn"), Deputy Attorney General for AGO, is being sued herein as an individual and supervisory defendant in her personal capacity only (as to economic and non-economic damages).

12.    Defendant ROBERT GRANT ("Grant"), Deputy Attorney General for AGO, is being sued herein as an individual and supervisory defendant in his personal capacity only (as to economic and non-economic damages).

13.    As detailed in Section 4 below, the above-named Defendants acted and/or failed to act under color of state law to deprive the Kings of particular rights under the United States Constitution, and Defendants' conduct was the actual cause of the Kings' injuries alleged herein.

14.    When acting in a supervisory capacity, the conduct of the above-named supervisory Defendants' subordinates deprived the Kings of particular rights under the United States Constitution; and

15.    The supervisory Defendants: (i) directed subordinates in the conduct that deprived the Kings of these rights; and/or (ii) set in motion a series of acts by subordinates, or knowingly refused to terminate a series of acts by subordinates, that the supervisory Defendants knew or reasonably should have known would cause the subordinates to deprive the Kings of these rights; and/or (iii) knew that the

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

subordinates were engaging in these acts and knew, or reasonably should have known, that the subordinates' conduct would deprive the Kings of these rights, and failed to act to prevent the subordinates from engaging in such conduct; and/or (iv) disregarded the known or obvious consequence that a particular training deficiency or omission would cause the subordinates to violate the Kings' constitutional rights, and that deficiency or omission actually caused the subordinates to deprive the Kings' constitutional rights; and/or (v) engaged in conduct that showed a reckless or callous indifference to the deprivation by subordinates of the rights of the Kings and others; and

16.    The supervisory Defendants' conduct was so closely related to the deprivation of the Kings' rights as to be the moving force that caused one or more of the Kings' ultimate injuries.

## III.    JURISDICTION AND VENUE

17.    This Court has jurisdiction over the Kings' federal claims under 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1983 because the Kings allege violations of their constitutional rights.  On December 20, 2024, the Kings filed a Tort Claim Form with the Washington State Office of Risk Management, Department of Enterprise Services alleging state law tort claims related to this matter against the State of Washington and its officers and employees for damages arising

COMPLAINT - 7

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1366244

out of tortious conduct; and after the expiration of the 60-day period provided in RCW 4.92.110, this Court will have supplemental jurisdiction over those claims pursuant to 28 U.S.C. §1367.

18.    Venue is proper in the Eastern District of Washington pursuant to 28 U.S.C. §1391(1) and (2) as some or all Defendants reside in this judicial district, the property at issue is located in this judicial district, and the events and omissions giving rise to the claim occurred in this judicial district.

## IV.    FACTUAL ALLEGATIONS

19.    The Kings own and operate King Ranch, a generational family ranch in eastern Washington, with the 4th, 5th, and 6th generations now living and working on the ranch in Grant County.

20.    King Ranch is comprised of approximately 22,000 acres of deeded land, and approximately 17,000 acres of leased land, most of which is leased from DNR.

21.    King Ranch operates on land located in both Grant and Douglas counties in Washington State.

22.    For the past 70 years, the Kings have actively raised and bred livestock and horses on private and public land.  They have also engaged in beef production, which has provided countless citizens with American-raised, open-range grazed beef

COMPLAINT - 8

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

and has enhanced food security in Washington State and the United States.

23.     Wade and Teresa King personally operate and steward tens of thousands of acres of arid grazing lands with the help of their daughter and one ranch hand.

24.     The Kings have invested a tremendous amount of time, energy, and money into their ranching operations on the King Ranch.  It has literally been their life work and the work of their family before them.

25.     The Kings own improvements on the leased property, including the fencing, which they installed and maintained at their sole cost and expense.  The Kings also manage the forage, water, and stock ponds, abate noxious weeds, and have stewarded and cared for this land for the past several decades.

26.     The Kings own real property in fee simple absolute in a checkerboard fashion bounded by the leased premises.  As mentioned above, the Kings also lease public and private property, all of which are integrated into their multi-generational ranching operation.  With regard to the Kings' lease in Grant County (the "Grant County Grazing Lease"), depending on rainfall and forage, the Kings have historically turned their cattle out on the leased land on March 15 of each year.  They are permitted to graze and leave their cattle on this leasehold until December 15 of each year.  DNR considers the lands leased by the Kings to be the "hottest and driest

COMPLAINT - 9

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1366244

ecoregion in Washington State," and dug-out stock watering ponds have been the primary and sole source of water for cattle and other wildlife on the leased lands for many decades.

27.    The Kings and their predecessors have leased the Grant County and Douglas County lands at issue from DNR for more than 68 years, and cattle have grazed these very same lands for more than 120 years.  The Kings' ranching activities and operations are important cultural resources.

28.    There has never been a cessation in the Kings' or their predecessors use or lease of these lands since these same uses and activities began more than 120 years ago.

29.    In February 2021, a member of the public contacted the Washington State Department of Fish and Wildlife ("WDFW") and reported stock pond maintenance activity on the Grant County lease land.  Almost one year later, WDFW informed DNR and Ecology of these alleged activities.

30.    Ecology conducted a haphazard investigation, relying primarily on low-resolution aerial photos and Google Earth images, and concluded that that "earthwork was conducted sometime between January and April 2021."  Without any on-the-ground investigation, Ecology jumped to the conclusion that these areas are regulated wetlands and "*assumed* that the impacted [alleged] wetlands are alkali"

COMPLAINT - 10

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

(emphasis added).

31.    Based on this limited consideration of context and relevant circumstances, inexperienced civil servants at Ecology and DNR became instantly convinced that the alleged activities at issue in this case needed to be severely punished.  Without any reasonable evidentiary basis, key Ecology staff members immediately advocated for Ecology's civil investigation to "go criminal."  Because of emotions, politics, excessive deference, and lack of scrutiny, particularly during the COVID pandemic, the State's hybrid civil-criminal proceedings were rushed and reckless.

32.    With complete and total disregard for the statutory protections afforded the Kings under RCW 90.48.422(3) and RCW 90.44.050, the Defendants skipped past the need to collect any reliable evidence of liability or guilt, and instead focused their efforts on trying to generate evidence that would support the State's "bad actor" narrative, which they hoped would maximize the punishment, penalty, pressure on the Kings and others, and public fear.  After rushing to judgment and immediately concocting a "bad actor" narrative on Day 1, Ecology staff decided to start a criminal investigation on Day 2.

33.    From the very beginning, the criminal investigation was improperly intertwined with the civil proceedings.  Ecology's chief investigator, Defendant

COMPLAINT - 11

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

Sikes, was acting as the chief investigator for the State's criminal investigation. Even worse, the Defendants did not notify the Kings when the criminal investigation began nor did Ecology, DNR, or the AGO take any steps to protect the Kings' constitutional rights.

34.     On the contrary, in coordination with Defendants Ferguson, Blackburn, and Grant engaged in deceptive conduct as part of efforts to drive the State's criminal investigation forward.   For example, after Ecology initiated the criminal investigation and became a key player in the criminal investigation, they deceptively "lulled" the Kings into thinking there was no criminal jeopardy when they asked the Kings to provide evidence.   By Day 3, the Environmental Protection Division ("EPD") (a division of the AGO) was involved, and DNR was being invited by Ecology to attend meetings with Ecology and EPD in the hybrid civil-criminal proceedings.   The following is what occurred just before the Kings received their first notice that DNR believed the Kings' longstanding ranching activities may actually be a violation of the Grant County Grazing Lease:

35.     **Day 1 (December 6, 2021): "When it comes to wetland delineation, I am not just rusty, I am solid rust."**

36.     On Day 1 (December 6, 2021), a Regional Habitat Program Manager for WDFW wrote to a Senior Planner for Grant County asking for a meeting to

COMPLAINT - 12

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

discuss "wetland damages . . . done with maybe a bulldozer (photo below)."  Later that afternoon, the same agent for WDFW sent an email to Sikes inviting him to a meeting with the Grant County Planning Department on December 9.  Sikes confirmed that he did not have expertise in identifying regulated wetlands, admitting to the WDFW agent he was "not really in the wetlands arena anymore" and was "backfilling" for another employee who was out.  Sikes' statements were based on a single photograph and some Google Earth images, which appear to have been the sole basis for his suspicion that the alleged digging activities were wrongful conduct that should be investigated as not only a civil environmental violation but also a crime.

37.     Sikes would later expound on his lack of wetlands credentials, telling other Ecology staff, "When it comes to the nitty gritty of wetland delineation, I am not just rusty, I am solid rust."  But he was not deterred by his lack of expertise.  On the contrary, he worked zealously to initiate and drive the criminal investigation forward and would soon take on the formal title of "Investigator."  He was not qualified to conduct wetland determinations, but he was one of the few Ecology agents who eventually conducted any on-the-ground site investigation at King Ranch, which was limited to a handful of sites, with the rest "assumed" to be wetlands.

COMPLAINT - 13

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

38.    **Day 2 (December 7, 2021): "A great case for state criminal."**

39.    Sikes emailed Richard Mraz (also at Ecology) to explain that he was "just made aware that a number of (likely) alkali wetlands on DNR and USFWS lands NW of Soap Lake have been excavated for apparent cattle water." Sikes wrote: "The unproven strong suspicion is that a prominent rancher leasing DNR lands went on a bulldozing spree, . . . ." Despite this accusation, Sikes acknowledged that there "is no hard evidence of the responsible party."  Sikes then asked, "[s]hould this be referred to the AG criminal investigation folks?"  Mr. Mraz responded that same day, describing the alleged activities as "stunning and tragic." In response to the question about whether this matter should be referred to the "AG criminal investigation folks," Mr. Mraz explained that "[w]ithout a 'knowing and willful' responsible party I don't see a nexus to the criminal division but I do think it would be worthwhile to have a conversation with both criminal and our (civil) AG's for their input."  Mr. Mraz forwarded Sikes' email to Kerry Carroll (also at Ecology), who responded in a separate email thread (without mentioning the need for evidence providing a criminal "nexus") and wrote:

> As I was reading this my first thoughts were "we should bring the AG criminal division in on this." So yes Jeremy, I think *it is a great case for state criminal* but I am now thinking that it *also should get the attention of EPA criminal* and will forward.

40.    That same day, Ecology contacted EPD.

COMPLAINT - 14

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

41. **Day 3 (December 8, 2021): EPD "will take a look," and asks Ecology to explain in person.**

42. The following day, EPD's attorney responded, "I will take a look." Ms. Carroll wrote back to explain that she was:

> [L]ooking to set up *another meeting* regarding this case with Bill and the team. The wetlands that were essentially destroyed are very rare and cannot be replaced or mitigated for and of course there are complicated factors with land ownership and lease agreements, trespassing, federal lands, etc. . . that are probably best explained in person. Would you agree?

43. Mr. Stratton responded, "absolutely," explaining that "this is something that needs senior management knowledge and involvement" and that he could "start greasing the skids over here."

44. That same day, Ecology staffer Ms. Carroll emailed Sikes, Sara Hunt, Hallie Ladd, Richard Mraz, and Rowan Kelsall (all at Ecology), with the subject "Meeting with AG Criminal." Ms. Carroll explained that she was "preparing to send an email to Bill Sherman at the Environmental Protection Division (criminal/civil) of the AG's office regarding the Windy Springs violation" and proposed December 13, 17, or 21 for that meeting.

45. **Day 4 (December 9) and beyond: EPD confirms an all-agency meeting is "totally fine," and the Agencies abuse the civil-criminal process.**

46. Ms. Carroll wrote to Brad Roberts at EPD asking if representatives of

COMPLAINT - 15

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1366244

WDFW and DNR could attend the scheduled meeting, and Mr. Roberts said that would be "totally fine." EPD's attorneys sent some emails, attended some meetings, and tried to contact the Kings' employee through his mother, but they did not engage in any meaningful, independent investigation of the agencies' civil and criminal allegations. Instead, EPD deferred to both agencies' civil and criminal allegations, with no apparent scrutiny.

47.    After the criminal investigation was underway, the State began to abuse its power to control the parallel civil and criminal proceedings against the Kings. The Kings and their employee first became aware that there may be a criminal investigation underway on or around March 16, 2023. But the Kings had to find out about the State's secret investigation on their own, when they heard that EPD had called their employee's mother. None of the Defendants (or any other state actor) told the Kings the State was conducting a criminal investigation or gave the Kings any warnings about criminal jeopardy, before, during, or after their outreach efforts to the Kings about the alleged civil violations.

48.    On the contrary, for over a year, from December 2021 until March 2023, DNR, Ecology, and the AGO (through the Defendants' conduct) not only improperly delayed the Special Inquiry Judge proceeding, but *actively deceived and lulled* the Kings and their employee into believing the process was purely civil. DNR

COMPLAINT - 16

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1366244

and Ecology tried to present their outreach efforts as benign when, in reality, they were seeking evidence from the Kings to support the State's criminal case. For example, on February 10, 2022, Sikes emailed the Kings to say:

> At this stage we are trying to ascertain who may have conducted the excavation work. Please provide any information you may have about the use of mechanized equipment to excavate the wetland areas depicted in the time period described. ***We are still assessing the situation, and not asserting violations of state water quality laws against anyone at this time***. . . With these clarifications of our initial letter to inform you, please reply to us by February 25.

49.    By the time Sikes sent this email, the criminal investigation had already been underway for two months. As explained below, this type of conduct is deception and lulling, which is prohibited by clear precedent in the Ninth Circuit and other circuits discussing the limits on parallel civil and criminal proceedings.[1]

---

[1] The Ninth Circuit and the U.S. Supreme Court have both recognized that failure to provide sufficient notice that information gathered in a civil proceeding might be used in a subsequent criminal proceeding implicates the Fifth Amendment, is a due process violation, and an illegal departure from the proper administration of criminal justice. *U.S. v. Stringer*, 535 F.3d 929, 938 (9th Cir. 2008) (citing *Kordel*, 397 U.S. at 11–13); *see also U.S. v. Tweel*, 550 F.2d 297, 299 (5th Cir.1977) (IRS agent's failure to apprise defendant of the obvious criminal nature of the investigation "was a sneaky deliberate deception by the agent . . . and a flagrant disregard for [defendant's] rights."). Despite this precedent, the State provided no express warning, as required by *Kordel, Stringer*, and the cases they cite. Indeed, the State did not even hint at potential criminal jeopardy when interacting with the Kings. Instead, as demonstrated in the factual summary above, the State's agents took affirmative actions that appear to have been designed to deceive, mislead, and lull the Kings' employee and the Kings into trusting government agencies and

COMPLAINT - 17

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1366244

50.     Initially, DNR did not take the same aggressive approach as Ecology. DNR's land manager did not treat the alleged digging activities as violating the Grant County Grazing Lease or an enforcement situation.  Instead, he said, "he could understand the reasoning for the excavation work" because "water availability was a limiting factor in that area" for a "cattle operation." He explained that there were "no specific conditions in the lease regarding this type of work," that he was inclined "to leave the [alleged] wetlands alone to self-restore" and that DNR "may change lease terms upon renewal."  But Ecology insisted on aggressive enforcement, indicating that "DNR would actually be the responsible party" if DNR did not cooperate with Ecology in its campaign against the Kings, "at which point we both decided a management-level conversation would be best."  Ecology's threats had the intended effect.

51.     Less than two weeks later, and without conducting any investigation of its own, DNR sent its first notice to the Kings alleging that the Kings were in default of the Grant County Grazing Lease based on Ecology's position that "alkali wetlands" had been damaged.  The notice ordered the Kings to sign a statement admitting to Ecology's allegations that "14 Alkali ponds" were

---

sharing information with government officials without realizing it might be used against them in the future.

COMPLAINT - 18

**Van Ness Feldman** LLP

1366244

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

damaged by "ground disturbing work on this lease" and promising to "cooperate fully" with restoration, "once [Ecology] has determined a restoration plan." In this notice, Welker claimed that the lease required "[p]rior written authorization" for any ground-disturbing work. This statement reflected DNR's attempt to reinterpret the Grant County Grazing Lease to match the "management-level conversation" about Ecology's threats against DNR. In the past, DNR had never interpreted the Kings' grazing leases as requiring any such advance notice to dig or maintain stock watering ponds, which was always performed in accordance with industry standards. Historically, DNR has never required pre-authorization for the digging of stock watering ponds on leased grazing lands.

52.    The Kings responded with a letter indicating: (i) it was unclear which ponds were disturbed or what activity disturbed the ponds; (ii) nothing in the lease referred to Alkali ponds on the property as "rare critical type I wetland habitat;" and (iii) the Kings had not performed any activities on the Property that differed from their historical care and management of the land.

53.    On April 7, 2022, DNR wrote to the Kings regarding their lease in Douglas County (the "Douglas County Grazing Lease") to inform them that during the week of April 25, 2022, a notice of negotiation of state leases with existing lessees would be appearing in the local newspapers, and that bidders would have

COMPLAINT - 19

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

"until May 23, 2022 to submit a bonus bid application and payment on" the Lease. In this same letter, DNR explained to the Kings that there were two possible outcomes resulting from this process, either: (i) the Kings could match the bonus bid amount and the Kings would get to renew the Lease; or (ii) the Kings could refuse to match the bonus bid and the lease would then go to public auction.

54.    On October 4, 2022, DNR sent the Kings a second notice of default regarding the Grant County Grazing Lease.

55.    On October 20, 2022, the Kings sent DNR a letter denying they had defaulted on the lease and asserting that it was unclear which ponds were allegedly disturbed.

56.    On January 31, 2023, without giving the Kings an opportunity to defend themselves, and having refused to provide additional information, DNR terminated the Kings' Grant County Grazing Lease—before Ecology had even issued any formal administrative orders.   The letter terminating the lease noted that the Kings must immediately discontinue all use of the property pursuant to RCW 79.13.060(2), and the Kings must ensure their cattle no longer cross onto the leased property.   DNR did not make any attempt, before terminating the Grant County Grazing Lease, to comply with its statutory and regulatory duties, including duties owed to grazing lessees like the Kings.

COMPLAINT - 20

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

57.    On July 6, 2023, Ecology wrote the Kings explaining that a complaint had been received that "clearing and excavation occurred within and next to wetlands in Douglas County."  Ecology alleged that after reviewing some aerial photographs, general datasets, and some maps, "that at least 12 wetlands have been affected by the clearing and/or excavation between 2019 and 2022," and that two of these alleged wetlands are partially located on land leased to the Kings by DNR according to the Douglas County Assessor's Office database.  Ecology asserted that "90.48.080 prohibits discharging any matter that would cause or tend to cause pollution of waters of the state without a permit."  Ecology further asserted, contrary to RCW 90.48.422(3), that "[s]tock watering and/or water rights don't afford anyone permission to impact wetlands without authorization."

58.    On October 12, 2023, DNR sent the Kings a communication regarding the preparation of a new Douglas County Grazing Lease (Lease No. 10-C566326) with a goal to perform an inspection in the month of October 2023.

59.    The Kings, citing RCW 16.60.030, reached out to DNR on November 8, 2023, regarding fence ownership, as the Kings had been concurrently discussing their ownership of fencing related to the Lease with DNR.

60.    On February 2, 2024, despite the Kings having paid for the 2024 grazing season under the Douglas County Grazing Lease, which payment DNR

COMPLAINT - 21

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

accepted, DNR wrote to the Kings as follows: "This letter will serve as your official notification that the Department of Natural Resources (DNR) will not be renewing Douglas County lease 10-C56326 with you. This lease expired on September 30, 2023, after a one-year lease extension." DNR then instructed the Kings to remove certain fencing on the leased property within sixty days. DNR also attempted to reimburse the Kings for their payment under the Lease for the 2024 grazing season. DNR has never required lessees to remove improvements on this kind of timeline when deciding not to renew a long-standing grazing lease.

61.    The Kings were offered no opportunity to appeal DNR's decision, and DNR's February 2, 2024, letter did not contain any explanation of how the Kings could appeal this decision or contain any reference to RCW 79.02.030. The Kings were not offered a hearing and they were not afforded any due process prior to these determinations. DNR provided absolutely no explanation for the decision *not* to renew the Lease, which again, had been leased by the Kings and their predecessors for more than 68 years.

62.    On information and belief, DNR decided not to renew the Lease to the Kings to retaliate against them for: (i) appealing, rather than unquestionably accepting, two unfounded civil enforcement and penalty orders issued by Ecology; (ii) for refusing to allow DNR access across the Kings' privately-owned fee lands;

COMPLAINT - 22

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

(iii) for filing suit against DNR in Grant County, Washington, for DNR's unlawful termination of the King Ranch grazing lease in Grant County; and (iv) for filing suit against Ecology in Grant County, Washington related to Ecology's violation of the Washington State Administrative Procedures Act ("APA").  Moreover, on information and belief, DNR decided *not* to renew the Lease with the Kings based upon Ecology's unfounded assertions that the Kings had violated chapter 90.48 RCW by digging stock watering ponds in what Ecology believes to be—based only on maps and its own biased and unsubstantiated suspicions—regulated wetlands.

63.    However, the Kings have not made any change in their management of the leased premises at any time during their lease of this land.  The Kings have always managed their leased lands consistent with historically accepted and standard industry practices (including those of their predecessors), and they never received any notice regarding any change in DNR's expectations.  In fact, DNR (and its staff) has known about and even approved of the Kings' practices and management of the leased lands for decades.

64.    Suddenly, and even though things were progressing as they normally do when renewing the Douglas County Grazing Lease, DNR simply decided *not* to lease this landlocked parcel to the Kings for grazing.  As this was a long-term lease, and in light of the extensive history between the parties, based upon DNR's course

COMPLAINT - 23

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

of conduct, representations, understandings, and dealings with the Kings over the years, the Kings made long-term management and operational plans regarding the Grant County Grazing Lease, the Douglas County Grazing Lease, and their other leases, their privately-owned land, and their cattle.  The Kings invested heavily in fencing and stewarded the leased lands for decades.  DNR authorized and always recognized these investments as the Kings' property.  These investments were acceptable to the Kings because they made sense from an economic and management perspective, given the length of the lease term, and based on the Kings' understanding that the Grant County Grazing Lease and the Douglas County Grazing Lease would continue for as long as they continued to graze their cattle on the leased premises as they have for decades.

65.    Despite the significant financial cost to the Kings to install fencing on the leased land, DNR now claims, as part of its decision *not* to renew the Douglas County Grazing Lease, to have seized total and complete control of improvements that are the Kings' property, and DNR has demanded the Kings remove authorized improvements.  DNR and the Kings entered into the Douglas County Grazing Lease with a full and complete understanding by both parties that the Kings had their own property located on the leased premises.  DNR waited until the coldest months of the year to give the Kings just 60 days to remove an undivided one-half interest in

COMPLAINT - 24

**Van Ness Feldman** LLP

fencing for which the Kings entirely paid to build and maintain, in addition to two stock water wells that were listed on the improvements.  The 60 days' notice did not provide the Kings with enough time to mitigate their damages, nor to find alternative grazing land for their cattle, which caused the Kings to suffer economic loss, damages, and other hardships.  Moreover, DNR has never treated other grazing land lessees in this fashion.

66.     DNR has made no effort to explain the basis or rationale for its decision *not* to renew the Douglas County Grazing Lease.  DNR has made no attempt to resolve any of these issues with the Kings.  On the contrary, Franz and Watson have rebuffed the Kings' repeated requests to meet and discuss these issues that, after decades of agency consent to and approval of the Kings' ranching practices without any mention of "alkali wetlands," suddenly became an urgent concern to DNR and Ecology in 2021.

67.     On February 14, 2024, the Kings sent a letter to Commissioner Franz requesting a meeting to discuss these matters, a true and correct copy of which is attached hereto as **Appendix 1** and incorporated herein by this reference.  Franz declined to meet with the Kings.  Franz's individual conduct caused one or more of the Kings' injuries; and, through her supervisory conduct including inadequately and improperly training, supervising, and controlling subordinates, and/or her

COMPLAINT - 25

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

acquiescence in her subordinates' conduct, and/or her conduct showing a reckless or callous indifference to the deprivation by the subordinate of the rights of the Kings and others**,** Franz was the moving force that caused one or more of the Kings' injuries.

68.     On February 14, 2024, the Kings also sent a letter to Director Watson requesting a meeting to discuss these matters, a true and correct copy of which is attached hereto as **Appendix 2** and incorporated herein by this reference.  Watson declined to meet with the Kings.  Watson's individual conduct caused one or more of the Kings' injuries; and, through her supervisory conduct including inadequately and improperly training, supervising, and controlling subordinates, and/or her acquiescence in her subordinates' conduct, and/or her conduct showing a reckless or callous indifference to the deprivation by the subordinate of the rights of the Kings and others**,** Watson was the moving force that caused one or more of the Kings' injuries.

69.     In light of the configuration of the leased premises in relation to the Kings' privately-owned land, DNR knows that the Kings will face certain and irreparable harm if the Kings are unable to graze their cattle on the leased lands. There are no alternative grazing properties available.  Without the Grant County and Douglas County Grazing Leases, the Kings will have to take the majority of their

COMPLAINT - 26

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

cattle to auction, which will cause the Kings to lose their cattle's genetics, the Kings' livelihood, and generations of ranching heritage.  The cattle will not bring their full and best potential value with this type of rushed sale at auction, which will bring further economic hardship and loss to the Kings.  By contrast, allowing the same cattle to graze on the same land that the Kings' cattle have grazed for decades would cause absolutely no hardship to the Defendants.

70.     On King Ranch, stock watering is the only existing and designated use of waters, and it is the only use the State Legislature has declared to be legally "beneficial."   Washington State law requires Ecology to protect existing and beneficial uses, like the Kings' stock watering rights.

71.     Dugout stock watering ponds, also called "water holes," are an important part of DNR's history.  For example, DNR's 1993 Agricultural and Grazing Lands Program Policy Plan describes how, after the Homestead Act stimulated agricultural settlement in the late 1800s and early 1900s, "[s]tockmen used this free land act to claim available water holes and gain control of the surrounding grazing land, particularly in the arid regions of the state."  King Ranch is located on the Columbia Plateau, which DNR describes as "the hottest and driest ecoregion in Washington."

72.     Stock watering ponds (or water holes) are essential for grazing, and

COMPLAINT - 27

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

they also provide other benefits, as the Washington State Legislature has recognized. In 1955, the Legislature passed a law authorizing DNR to enter into cooperative agreements with ranchers and pay them for "the improvement of the state's grazing ranges by the clearing of debris, maintenance of trails and water holes, and other requirements for the general improvement of the grazing ranges." RCW 79.13.400. This law remains in effect today.

73.    To protect the values associated with riparian areas, wetlands, and other sensitive areas on state-owned grazing lands, DNR's leasing process has historically relied upon DNR's internal inventories of such sensitive areas. DNR, not its lessees, is responsible for identifying ecologically sensitive areas on grazing lands and proposing appropriate provisions at the beginning of a lease term.

74.    In 1992, the Washington Rangeland Committee met to discuss potential legislation to improve environmental conditions on state-owned grazing lands, while also maintaining the economic viability of grazing leases. In 1993, with DNR's support, the Legislature passed legislation, now codified at RCW 79.13.610, that attempted to strike an appropriate balance. The statute required state agencies to work with a technical committee of experts to develop and adopt a set of ecosystem standards by December 31, 1994, and to apply those standards in their land management, leasing, and other activities, including when DNR addresses

COMPLAINT - 28

ecosystem issues in grazing leases.

75.    In 1994, a technical advisory committee published the ecosystem standards mandated by RCW 79.13.610.  In 1996, at the urging of lessees who wanted to emphasize that DNR should not be allowed to force the termination of existing grazing uses, the Legislature passed another law, codified in RCW 79.13.620, which clarified the process in RCW 79.13.610.  The legislative history of RCW 79.13.610-.620 confirms that legislators required DNR to take a cooperative approach because they believed cooperation with lessees was essential for DNR to effectively implement the ecosystem standards on trust lands, which are scattered and tend to be associated with private land holdings—like the King Ranch, which includes a checkerboard pattern of the Kings' privately-owned land and land the Kings lease from DNR (and others).

76.    A central part of balancing the tension between environmental protection and established agricultural practices was the Legislature's mandate that DNR must work in collaboration with lessees to develop "site-specific solutions" to any ecosystem issues that might affect ranching practices.  For leases signed after 1994, DNR is required to address ecological issues on grazing lands by identifying any such areas and incorporating protective measures into the lease terms at the time of renewal.  *See* RCW 79.13.610(5).  If DNR receives new information about potential

COMPLAINT - 29

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

ecological resources after a lease is signed, DNR is required to engage with lessees in a site-specific and "collaborative" process designed to allow continued use of the land for grazing purposes. As the "owner" of these lands, DNR is in the best position to identify such areas. Through Defendants' conduct, DNR failed to comply with the procedural requirements of RCW 79.13.610-.620, engaged in a course of conduct specifically prohibited by the legislation, and continued to do so even after the Kings reminded DNR of its statutory obligations.

77.    During the nearly 70 years that the Kings and their family have leased these lands from the State, at no time has DNR ever notified the Kings and their predecessors about any potential concerns about potential impacts to wetlands or other sensitive areas from grazing and stock water activities occurring on the leased lands. None of the Kings' leases with DNR include any terms disclosing the existence of (or limiting activities in, around, or near) any alleged wetlands located on the leased premises.

78.    The permitted use for this State trust land is grazing, which is an important agricultural use. DNR's internal emails show that grazing is the highest and best use for these lands. Therefore, DNR's first priority should be protecting this land's grazing/agricultural use. But DNR did none of this. Instead, Defendants conspired to paint the Kings as rogue actors who needed to be punished for ranching

COMPLAINT - 30

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

on the leased lands. Through Defendants' conduct, DNR unilaterally decided, based entirely upon speculation, flimsy evidence, and in complete disregard for the law and the Kings' rights, that the most fitting punishment was to terminate all of the Kings' grazing leases, attempt to tarnish their reputations, and pursue civil and criminal charges against them for (allegedly) carrying on the exact same ranching activities that have occurred on these lands for more than 100 years.

79.     The Kings filed suit in Grant County Superior Court challenging DNR's unlawful termination of their Grant County Grazing Lease. While the AGO was pursuing its Special Inquiry Judge proceeding, DNR moved the Grant County Superior Court for a preliminary injunction prohibiting the Kings from further grazing their cattle on the entire 12,800-acre leasehold. In light of the significant overlap between the State's criminal investigation and the civil proceedings, the Kings moved to extend the stay that had been entered in the case to include the preliminary injunction.

80.     Due to the State's pending criminal investigation, the Kings were not able to present evidence and testimony to meaningfully oppose DNR's motion for a preliminary injunction without jeopardizing their rights under the Fifth Amendment to the United States Constitution. Electing to preserve their Constitutional rights, the Kings did their level best to defend against DNR's motion for a preliminary

COMPLAINT - 31

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

injunction.  DNR's position, however, was that its leasing decisions are limited to the agency's "administrative record" prepared by the DNR staff, and that the Kings may not offer testimony or other evidence outside that administrative record anyway. The Kings refuted this contention, but the Superior Court accepted DNR's position. Nevertheless, the Superior Court was compelled to remark, in a footnote, that "[t]he court agrees with Plaintiffs that limiting review on the issue of termination/default to a decision made by DNR without Plaintiffs ability to dispute evidence, testify, or present witnesses, is constitutionally problematic" and that the issue warranted further briefing.

81.    The Kings sought discretionary review of the Grant County Superior Court's order granting DNR's preliminary injunction and denial of extending the stay to include the injunctive relief sought by DNR.  The Kings asserted that the Superior Court issued a vague and overly broad injunction that provided DNR with the ultimate relief it sought on the merits, and which needlessly impaired the Kings' rights and their ability to operate King Ranch.  The Kings also challenged the Superior Court's erroneous decision to only consider the administrative record hand-picked by DNR without considering any of the limited evidence the Kings were able to present in opposition and the Superior Court's failure to conduct an on-the-record balancing test of all of the factors from *King v. Olympic Pipeline Co.*, 104 Wn. App.

COMPLAINT - 32

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

338, 352, 16 P.3d 45 (2000), which is unambiguously required under Washington State and federal case law.  On December 6, 2024, a commissioner of the Washington Court of Appeals, Division III, issued a decision denying the Kings' Motion for Discretionary Review of the Superior Court's orders.  The Kings intend to file a Motion to Modify asking the Court of Appeals to reverse the Commissioner's Ruling and accept review.

82.    Having taken every opportunity to seek redress in state court, the Kings filed the instant action to ensure that their constitutional rights are considered and protected, to preserve all of their claims and rights, and to vindicate themselves in light of the Defendants' illegal, unreasonable, and zealous campaign to destroy the Kings and King Ranch.

## V.    FIRST CAUSE OF ACTION – Unconstitutional Taking of Private Property (Federal)

83.    The Kings incorporate the above and below as though fully set forth herein.

84.    The Fifth Amendment to the U.S. Constitution (by way of the Fourteenth Amendment's Due Process Clause) requires just compensation when private property is taken or damaged for public use.

85.    At all relevant times, the Kings held a protected property interest and right in and to: (i) the Grant County Grazing Lease and the Douglas County Grazing

COMPLAINT - 33

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

Lease; (ii) their vested permit-exempt stock watering rights in Grant and Douglas Counties; (iii) their right of access to and from certain tracts of real properties the Kings own in fee that are surrounded by lands the Kings' lease from DNR in Grant County and in Douglas County; and (iv) King Ranch (as a going concern).

86.    In 2022, Defendants Watson and Sikes unlawfully and improperly concluded that what they characterized as certain "unauthorized excavations" on the land the Kings' lease from DNR in Grant County, Washington, caused damage to what Defendants Watson and Sikes characterized as regulated and protected "Alkali wetlands."

87.    After unquestioningly accepting Defendants Watson and Sikes' unfounded allegations, Defendants Franz, Welker, and Cypert unlawfully and improperly terminated the Kings' Grant County Grazing Lease on January 31, 2023, based on pressure from Ecology and certain environmental preferences and beliefs (rather than statutory and regulatory constraints and policies).  Defendants Franz, Welker, and Cypert also reinterpreted lease terms to placate Ecology and to accomplish their newly realized goals and preferences.

88.    Similarly, on February 2, 2024, based on Defendants Franz, Welker, and Cypert's unreasoned reliance on Ecology's erroneous findings of fact, false allegations, and misunderstanding and misapplication of the law, Defendants Franz,

COMPLAINT - 34

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

Welker, and Cypert decided *not to renew* the Kings' Douglas County Grazing Lease. This decision was also based on pressure from Ecology, on Defendants Franz, Welker, and Cypert's desire to retaliate against the Kings, and on Defendants Franz, Welker, and Cypert's re-interpretation of the lease terms to accommodate DNR's collaboration with Ecology. As a result of DNR's allegiance to Ecology, Defendants Franz, Welker, and Cypert abandoned their mandatory duties and scapegoated the Kings for political convenience and spite.

89.    Defendants Franz, Welker, and Cypert's decisions to *terminate* the Kings' Grant County Grazing Lease and *not* to renew the Douglas County Grazing Lease with the Kings caused and constituted an invasion, interference with, and unconstitutional taking of the Kings' private property, including their use and/or enjoyment of the Grant County Grazing Lease lands, the Douglas County Grazing Lease lands, the Kings' fee owned real properties that are adjacent to, and integrated with, the premises the Kings' lease from DNR is Grant County and Douglas County, and the Kings' vested permit-exempt stock watering rights.

90.    Defendants Franz, Welker, and Cypert acting alone, and in concert with Defendants Watson and Sikes (and others), under color of law, unlawfully terminated the Kings' Grant County Grazing Lease, did not renew the Kings' Douglas County Grazing Lease, diminished the value of the Kings' real property,

COMPLAINT - 35

Van Ness
Feldman LLP

and impaired the functionality of King Ranch thereby interfering with the Kings' ownership, use, enjoyment, and other proprietary rights associated with the ownership and leaseholds of its real property and the Kings' business ventures located thereon.

91.    In their supervisory capacities, Defendants Franz, Welker, Cypert, Watson, and Sikes inadequately and improperly trained, supervised, and controlled their subordinates, including without limitation through inadequate and improper training on the lawful procedures for DNR grazing lease decisions and Ecology wetland enforcement actions, disregarding the known or obvious consequence that this training deficiency would cause the subordinates to violate the Kings' constitutional rights, and that deficiency or omission actually caused the subordinates to deprive the Kings' constitutional rights; and/or those supervisory Defendants acquiesced in the constitutional deprivations by the subordinates; and/or the supervisory Defendants' actions and failures to act showed a reckless or callous indifference to the rights of the Kings and others.

92.    Defendants did not pay or tender reasonable compensation to the Kings for the taking of their property and the diminishment of its value.

93.    The Kings are entitled to: (i) a declaration that Defendants Franz, Welker, and Cypert's termination of the Kings' Grant County Grazing Lease and

COMPLAINT - 36

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

their decision *not* to renew the Kings' Douglas County Grazing Lease violates the Fifth Amendment to the U.S. Constitution and Article 1, Section 16 of the Washington State Constitution, and caused and constituted an unlawful taking of the Kings' private property without just compensation having been paid; (ii) a preliminary and permanent injunction enjoining the termination of the Kings' Grant County Grazing Lease and the decision not to renew the Kings' Douglas County Grazing Lease and the Defendants' interference with, and damaging of, the Kings' private property, including without limitation, their fee-owned real properties, their vested permit-exempt stock watering rights, and King Ranch (a business of going concern); and, (iii) an award of damages, costs, and attorney fees in such amounts as will be proven and as may be provided for by federal and/or Washington State law, including without limitation 42 U.S.C. § 1988 and/or RCW 8.25.070.

94.    Moreover, since the Defendants' actions were willful, wanton, malicious, and/or in reckless indifference to and conscious disregard for the Kings' constitutional rights, the Kings also request an award of punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct.

### VI.    SECOND CAUSE OF ACTION – Unconstitutional Taking of Private Property (State)

95.    The Kings incorporate the above and below as though fully set forth

COMPLAINT - 37

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

herein.

96.     Article I, Section 16 of Washington's Constitution more expansively protects property rights than its federal analog found in the Fifth Amendment, but also requires just compensation to be paid when private property is taken or damaged for public use.

97.     At all relevant times, the Kings held a protected property interest and right in and to: (i) the Grant County Grazing Lease and the Douglas County Grazing Lease; (ii) their vested permit-exempt stock watering rights in Grant and Douglas Counties; (iii) their right of access to and from certain tracts of real properties the Kings own in fee that are surrounded by lands the Kings' lease from DNR in Grant County and in Douglas County; and (iv) King Ranch (as a going concern).

98.     In 2022, Defendants Watson and Sikes unlawfully and improperly concluded that what they characterized as certain "unauthorized excavations" on the land the Kings' lease from DNR in Grant County, Washington, caused damage to what Defendants Watson and Sikes characterized as regulated and protected "Alkali wetlands."

99.     After unquestioningly accepting Defendants Watson, and Sikes' unfounded allegations, Defendants Franz, Welker, and Cypert unlawfully and improperly terminated the Kings' Grant County Grazing Lease on January 31, 2023,

COMPLAINT - 38

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1366244

based on pressure from Ecology and certain environmental preferences and beliefs (rather than statutory and regulatory constraints and policies). Defendants Franz, Welker, and Cypert also reinterpreted lease terms to placate Ecology and to accomplish their newly realized goals and preferences.

100. Similarly, on February 2, 2024, based on Defendants Franz, Welker, and Cypert's unreasoned reliance on Ecology's erroneous findings of fact, false allegations, and misunderstanding and misapplication of the law, Defendants Franz, Welker, and Cypert decided *not to renew* the Kings' Douglas County Grazing Lease. This decision was also based on pressure from Ecology, Defendants Franz, Welker, and Cypert's desire to retaliate against the Kings, and Defendants Franz, Welker, and Cypert's re-interpretation of the lease terms to accommodate DNR's collaboration with Ecology. As a result of DNR's unfettered allegiance to Ecology, Defendants Franz, Welker, and Cypert abandoned their mandatory duties and scapegoated the Kings for political convenience and spite.

101. Defendants Franz, Welker, and Cypert's decision to *terminate* the Kings' Grant County Grazing Lease and *not* to renew the Douglas County Grazing Lease with the Kings caused and constituted an invasion, interference with, and unconstitutional takings of the Kings' private property, including their use and/or enjoyment of the Grant County Grazing Lease lands, the Douglas County Grazing

COMPLAINT - 39

**Van Ness Feldman** LLP

Lease lands, the Kings' fee owned real properties that are adjacent to, and integrated with, the premises the Kings' lease from DNR is Grant County and Douglas County, and the Kings' vested permit-exempt stock watering rights.

102.   Defendants Franz, Welker, and Cypert acting alone, and in concert with Defendants Watson and Sikes (and others), under color of law, unlawfully terminated the Kings' Grant County Grazing Lease, did not renew the Kings' Douglas County Grazing Lease, diminished the value of the Kings' real property, and impaired the functionality of King Ranch thereby interfering with the Kings' ownership, use, enjoyment, and other proprietary rights associated with the ownership and leaseholds of its real property and the Kings' business ventures located thereon.

103.   Defendants did not pay or tender reasonable compensation to the Kings for the taking of the Kings' private property and the diminishment of its value.  Nor did the Defendants tender into a court's registry a sum for the Kings (as is an option under Washington's Constitution).

104.   The Kings are entitled to: (i) a declaration that Defendants Franz, Welker, and Cypert's termination of the Kings' Grant County Grazing Lease and their decision *not* to renew the Kings' Douglas County Grazing Lease violates Article 1, Section 16 of the Washington State Constitution, and caused and

COMPLAINT - 40

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

constituted an unlawful taking of the Kings' private property without just compensation having been paid; (ii) a preliminary and permanent injunction enjoining the termination of the Kings' Grant County Grazing Lease and the decision not to renew the Kings' Douglas County Grazing Lease and the Defendants' interference with, and damaging of, the Kings' private property, including without limitation, their fee-owned real properties, their vested permit-exempt stock watering rights, and King Ranch (a business of going concern); and, (iii) an award of damages, costs, and attorney fees in such amounts as will be proven and as may be provided for by federal and/or Washington State law, including without limitation 42 U.S.C. § 1988 and/or RCW 8.25.070.

105.    The Kings are also entitled to a declaration that such conduct effectuated a regulatory taking as recognized by *Chong Yim v. City of Seattle*, 194 Wn.2d 651, 658, 451 P.3d 675 (2019).

106.    Moreover, since the Defendants' actions were willful, wanton, reckless, and malicious and further show complete indifference to and conscious disregard for the Kings' constitutional rights, the Kings are also entitled to an award of punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct.

COMPLAINT - 41

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

## VII.   THIRD CAUSE OF ACTION—PROCEDURAL AND SUBSTANTIVE DUE PROCESS

107.   The Kings incorporate everything set forth above and below as though fully set forth herein.

108.   The Constitution of the United States and the Washington State Constitution guarantee that no person shall be deprived of life, liberty, or property, without due process of law.

109.   Defendants' conduct violated the Kings' procedural and substantive due process rights.

110.   Substantive due process protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures; it requires that deprivations of life, liberty, and/or property be substantively reasonable.   Defendants' conduct, including without limitation that outlined below, was invidious and/or irrational, and/or arbitrary and/or capricious, and/or constituted willful and unreasoning action taken without regard to or in consideration of the facts and circumstances, which violated the Kings' substantive due process and other rights.

111.   Without limitation, and as a representative example, Defendants violated the Kings' procedural due process rights by engaging in the following conduct:

COMPLAINT - 42

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

112.   Defendants Watson and Sikes induced DNR to terminate the Kings' Grant County Grazing Lease and not to renew the Kings' Douglas County Grazing Lease and pursued enforcement actions against the Kings without first considering whether an enforcement action would contribute to the conversion of agricultural land to nonagricultural uses (as required by RCW 90.48.450);

113.   Defendants Franz, Welker, and Cypert terminated the Grant County Grazing Lease without following the statutorily required process pertaining to ecosystem standards set forth in chapter 79.13 RCW; and

114.   In their supervisory capacities, Defendants Watson, Sikes, Franz, Welker, Cypert, Ferguson, Blackburn, and/or Grant inadequately and improperly trained, supervised, and controlled their subordinates, including without limitation through inadequate and improper training on the lawful procedures for DNR lease decisions, the lawful procedures for Ecology wetland enforcement actions, and the risk that certain kinds of conduct in a civil-criminal investigation can deprive prejudice and violate the target's Fifth Amendment rights, disregarding the known or obvious consequence that these kinds of training deficiencies and/or omissions would cause the subordinates to violate the Kings' constitutional rights, and that deficiency and/or omission actually caused the subordinates to deprive the Kings' constitutional rights; and/or those supervisory Defendants acquiesced in the

COMPLAINT - 43

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

constitutional deprivations by the subordinates; and/or the supervisory Defendants' actions and failures to act showed a reckless or callous indifference to the rights of the Kings and others.

115.   In their individual capacities, Defendants Watson, Sikes, Franz, Welker, and Cypert acted, failed to act, and/or conspired with Defendants Ferguson, Blackburn, and Grant, who caused the AGO to pursue a criminal investigation against the Kings based on the Kings' historic and customary agricultural practices, and initiated a Special Inquiry Judge proceeding in an attempt to prevent and/or limit the evidence and testimony the Kings could rely upon to defend themselves in parallel civil proceedings.  For example, when DNR sought a preliminary injunction in the Kings' Grant County Superior Court action against DNR, the Kings were unable to defend themselves, and the Superior Court entered an unlawful injunction prohibiting the Kings from using the leased lands or any other public lands in Grant County, depriving the Kings of the ability to lawfully access their privately owned real property.

116.   Without limitation, and as another representative example, Defendants violated the Kings' substantive due process rights by engaging in the following conduct:

117.   Defendants Watson and Sikes arbitrarily, capriciously, and unlawfully

COMPLAINT - 44

**Van Ness Feldman** LLP

concluded (based on flimsy and inaccurate information and evidence) that the Grant County Grazing Lease lands contain "Alkali wetlands," and ignored the Kings' vested permit-exempt stock watering rights when convincing DNR to terminate the Kings' Grant County Grazing Lease and pursuing an enforcement action against the Kings despite the statutory bar on Ecology's regulatory authority pertaining to stock watering rights (RCW 90.48.422(3));

118.    Defendants Franz, Welker, and Cypert unlawfully, arbitrarily, and capriciously delegated their authority (as both landlord and manager of State lands) to Defendants Watson and Sikes; and,

119.    Defendants Franz, Welker, and Cypert unlawfully, arbitrarily, and capriciously terminated the Kings' Grant County Grazing Lease and decided not to renew the Kings' Douglas County Grazing Lease, and intentionally disregarded the Kings' vested and permit-exempt stock watering rights.

120.    Accordingly, the Kings are entitled to: (i) a declaration that Defendants Franz, Welker, and Cypert, Watson, and Sikes, Ferguson, Blackburn, and Grant violated the Kings' procedural and substantive due process rights; (ii) a preliminary and permanent injunction enjoining further deprivation of the Kings' rights based on actions and/or conduct violative of the Kings' procedural and substantive due process rights; and, (iii) an award of damages, costs, and attorney fees in such

COMPLAINT - 45

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1   amounts as will be proven and as may be provided for by federal and/or Washington

2   State law, including without limitation 42 U.S.C. § 1988.

3       121.   Moreover, since the Defendants' actions were willful, wanton, reckless,

4   and malicious and further show complete indifference to and conscious disregard for

5

6   the Kings' constitutional rights, the Kings also request an award of punitive or

7   exemplary damages in an amount sufficient to punish and deter the Defendants and

8

9   others similarly situated from engaging in similar conduct.

10  **VIII.  FOURTH CAUSE OF ACTION—Violation of Equal Protection**

11      122.   The Kings incorporate everything set forth above and below as though

12  fully set forth herein.

13

14      123.   The Defendants, acting with improper motive, have intentionally

15  treated the Kings differently than other similarly situated persons, and there is no

16
    rational basis for the difference in treatment.
17

18      124.   Such retaliatory and disparate treatment includes, without limitation,

19  the following:

20
        125.   Defendants Franz, Welker, and Cypert treated the Kings differently
21

22  than other tenants of agricultural grazing leases in the State of Washington by

23  disregarding the Kings' vested and permit-exempt stock watering rights; by

24
    terminating the Kings' Grant County Grazing Lease and by deciding not to renew
25

COMPLAINT - 46

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

the Kings' Douglas County Grazing Lease based on unlawful conclusions reached by Ecology; and by declaring the Kings in default of the Grant County Grazing Lease for allegedly performing a customary agricultural practice (digging stock water ponds), which is an activity other tenants of grazing leases throughout the State of Washington perform on a regular basis and in locations that may actually constitute regulated wetlands;

126.    Defendants Watson and Sikes treated the Kings differently than other members of the regulated community by relying almost exclusively on aerial photographs to determine that certain stock watering ponds on the Grant County leased lands constitute regulated "Alkali wetlands"; by initiating an enforcement action without first considering whether the action could contribute to the conversion of agricultural land to nonagricultural land; and by referring the matter for criminal prosecution without sufficient information and evidence to substantiate Ecology's politically-motivated concerns; and,

127.    Defendants Ferguson, Blackburn, and Grant treated the Kings differently than other citizens of the State of Washington by initiating a criminal investigation without probable cause and based solely on Ecology's speculation premised upon a single aerial photograph, and by initiating a Special Inquiry Judge proceeding to prevent the Kings from being able to meaningfully participate in the

COMPLAINT - 47

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

various parallel civil proceedings to obtain evidence and information for Defendants to use against the Kings in those parallel civil proceedings.

128.  Defendants' conduct violated the equal protection clauses of the United States Constitution, and the Kings have suffered damages as a result.  Accordingly, the Kings are entitled to: (i) a declaration that Defendants Franz, Welker, Cypert, Watson, Sikes, Ferguson, Blackburn, and Grant violated the equal protection clauses of the United States Constitution and the Washington State Constitution; (ii) a preliminary and permanent injunction enjoining further disparate treatment of the Kings' in violation of their constitutional rights to equal protection; and, (iii) an award of damages, costs, and attorney fees in such amounts as will be proven and as may be provided for by federal and/or Washington State law, including without limitation 42 U.S.C. § 1988.

129.  Moreover, since the Defendants' actions were willful, wanton, reckless, and malicious and further show complete indifference to and conscious disregard for the Kings' constitutional rights, the Kings also request an award of punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct.

### IX.    FIFTH CAUSE OF ACTION—Violations of the Right of Free Speech and the Right to Petition the Government

130.  The Kings incorporate everything set forth above and below as though

COMPLAINT - 48

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

fully set forth herein.

131.   The First Amendment to the United States Constitution protects the freedom of speech and the right to petition the government for redress of grievances. Freedom of speech includes the right not to speak.  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943).

132.   For the reasons set forth above, which are incorporated herein, Defendants' conduct unlawfully and unreasonably interfered with and restricted the Kings' constitutional rights of free speech and to petition the government.  For instance, and without limitation, Defendants' conduct punished the Kings for electing to remain silent in light of the AGO's criminal investigation and threats of bringing misdemeanor and felony charges arising from the Kings' alleged exercise of their vested stock watering rights.  At a time when the Kings were unable to present evidence and testimony to defend themselves because of the pursuit of criminal charges against the Kings by Ferguson, Blackburn, Grant, and others at the AGO, DNR (through the conduct of Franz, Welker, and Cypert and others at DNR), proceeded to obtain a preliminary injunction evicting the Kings and their livestock from tens of thousands of acres of land they leased from DNR for grazing purposes. The Kings were therefore deprived of their day in court and stripped of their First Amendment right to petition the government for redress.

COMPLAINT - 49

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

133.   Defendants' conduct violated the Kings' rights guaranteed under the First Amendment to the United States Constitution, and the Kings have suffered damages as a result.  Accordingly, the Kings are entitled to: (i) a declaration that Defendants Franz, Welker, and Cypert, Watson, and Sikes, and Ferguson, Blackburn, and Grant violated the Kings' rights under the First Amendment to the United States Constitution; (ii) a preliminary and permanent injunction enjoining the Defendants' further violation of the Kings' rights under the First Amendment to the United States Constitution; and, (iii) an award of damages, costs, and attorney fees in such amounts as will be proven and as may be provided for by federal and/or Washington State law, including without limitation 42 U.S.C. § 1988.

134.   Moreover, since the Defendants' actions were willful, wanton, reckless, and malicious and further show complete indifference to and conscious disregard for the Kings' constitutional rights, the Kings also request an award of punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct.

## X.    SIXTH CAUSE OF ACTION—Violations of the Right of Freedom and Privacy

135.   The Kings incorporate everything set forth above and below as though fully set forth herein.

136.   The Fourth Amendment to the United States Constitution guarantees

COMPLAINT - 50

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

1366244

citizens the right to privacy and freedom from unreasonable government interference and intrusions.

137.    The United States Constitution also provides for the unenumerated right to privacy, as announced by the Supreme Court in *Griswold v. Conn.*, 381 U.S. 479, 484, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965).

138.    Defendants' conduct, described herein, has violated the Kings' constitutional rights to privacy and freedom.

139.    Defendants' conduct violated the Kings' rights to privacy and freedom, which are unenumerated rights contained in the United States Constitution and which are guaranteed by the Fourth Amendment to the United States Constitution, and the Kings have suffered damages as a result.  Accordingly, the Kings are entitled to: (i) a declaration that Defendants Franz, Welker, and Cypert, Watson, and Sikes, and Ferguson, Blackburn, and Grant violated the Kings' rights of privacy and freedom under United States Constitution; (ii) a preliminary and permanent injunction enjoining the Defendants' further violation of the Kings' rights of privacy and freedom under the United States Constitution; and, (iii) an award of damages, costs, and attorney fees in such amounts as will be proven and as may be provided for by federal and/or Washington State law, including without limitation 42 U.S.C. § 1988.

COMPLAINT - 51

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

140.    Moreover, since the Defendants' actions were willful, wanton, reckless, and malicious and further show complete indifference to and conscious disregard for the Kings' constitutional rights, the Kings are also entitled to an award of punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct.

## XI.    SEVENTH CAUSE OF ACTION—Violations of the Right Against Self-Incrimination

141.    The Kings incorporate everything set forth above and below as though fully set forth herein.

142.    The Fifth Amendment to the United States Constitution protects citizens from having to testify against themselves.  This right was enshrined to preserve the integrity of the judicial system and reflects society's concern for the right of each individual to be let alone.

143.    Defendants' conduct described herein unreasonably and improperly infringed upon the Kings' rights under the Fifth Amendment to the United States Constitution.  For example, and without limitation, after Ferguson, Blackburn, and Grant threatened the Kings with misdemeanor and felony criminal charges, Franz and others at DNR obtained a preliminary injunction from the Grant County Superior Court, effectively evicting the Kings from their leased lands when they were unable to present evidence and testimony to oppose the motion for preliminary injunction.

COMPLAINT - 52

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

By preserving their rights under the Fifth Amendment to the United States Constitution, DNR and Franz punished the Kings and stripped them of their property rights and interests, without a meaningful opportunity to present evidence and testimony in their defense.

144.    Defendants' conduct violated the Kings' rights under the Fifth Amendment to the United States Constitution, and the Kings have suffered damages as a result.  Accordingly, the Kings are entitled to: (i) a declaration that Defendants Franz, Welker, and Cypert, Watson, and Sikes, and Ferguson, Blackburn, and Grant violated the Kings' rights under the Fifth Amendment to the United States Constitution; (ii) a preliminary and permanent injunction enjoining the Defendants' further violation of the Kings' rights under the Fifth Amendment to the United States Constitution; and, (iii) an award of damages, costs, and attorney fees in such amounts as will be proven and as may be provided for by federal and/or Washington State law, including without limitation 42 U.S.C. § 1988.

145.    Moreover, since the Defendants' actions were willful, wanton, reckless, and malicious and further show complete indifference to and conscious disregard for the Kings' constitutional rights, the Kings are also entitled to an award of punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct.

COMPLAINT - 53

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

## XII.   DAMAGES

146.   The Kings have been damaged as a direct and proximate result of Defendants' actions.   In particular, the Kings have suffered economic and noneconomic injuries, including but not limited to:

147.   Costs associated with the loss of the stock watering ponds, vested stock watering rights, and the use and benefit thereof;

148.   Monetary damages resulting from interference with and/or loss and/or loss of use of the Kings' improvements to leased and fee-owned lands, including without limitation fencing, infrastructure, and stock watering ponds;

149.   Monetary damages resulting from the Kings' inability to make appropriate business decision and plans based on the Defendants' illegal and unlawful conduct and assertions, which have resulted in years of business interruptions and uncertainty;

150.   Monetary damages resulting from having to (unnecessarily) develop new contingencies for the operation of their livestock business;

151.   Monetary damages resulting from inconvenience, including but not limited to expenditure of time and/or effort;

152.   Monetary damages resulting from violations of constitutional and statutory rights;

COMPLAINT - 54

Van Ness
Feldman LLP

1366244

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

153.    Monetary damages resulting from emotional distress and/or mental anguish, including but not limited to anxiety, fear, disappointment, embarrassment, and the loss of their generational family ranch.

154.    Monetary damages resulting from loss of reputation and/or community standing;

155.    Punitive or exemplary damages in an amount sufficient to punish and deter the Defendants and others similarly situated from engaging in similar conduct;

156.    The costs of attorneys, experts, consultants, and other costs of litigation; and

157.    Other damages to be proven at trial.

## XIII.  PRAYER FOR RELIEF

WHEREFORE, fully reserving their right to try the above claims to a jury, the Kings pray for the relief described above and as follows:

1.    That the practices of Defendants complained of herein be declared, adjudged, and decreed in violation of the Kings' rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further be declared, adjudged, and decreed in violation of the Kings' analogous rights as secured by the Washington State Constitution.

2.    That a permanent injunction be issued prohibiting Defendants or their

COMPLAINT - 55

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

agents from further conduct that violates or threatens to violate the Kings'
constitutional rights, including without limitation proceeding with leasing actions
and proceedings in violation of the Kings' rights; proceeding with regulatory
enforcement actions in violation of the Kings' rights; and/or retaliating against the
Kings for exercise of their First Amendment rights to free speech rights, exempt
stock water rights, right to petition for redress of grievances and to legally assemble,
and other constitutional and statutory rights.

3.      That this Court award compensatory damages to the Kings against the
Defendants jointly and severally, in an amount to be established at trial.

4.      That this Court award compensatory damages to the Kings against the
Defendants, jointly and severally, in their individual and official capacities, in an
amount to be determined at trial.

5.      That this Court award the Kings their attorney fees and the costs and
expenses of this action.

6.      For leave to amend this complaint, including without limitation
amending the complaint to incorporate the Kings' state tort claims, as alleged in the
Tort Claim Form filed on December 20, 2024, with the Washington State Office of
Risk Management, Department of Enterprise Services, a true and correct copy of
which is attached hereto as **Appendix 3** and incorporated herein by this reference,

COMPLAINT - 56

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

following the expiration of the 60-day period provided in RCW 4.92.110.

7.    That this Court award such other and further relief as is just and equitable in the premises.

## XIV.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and Local Civil Rule 38, the Kings demand a trial by jury in this action of all issues so triable.

Respectfully submitted this 20th day of December, 2024.

ATTORNEY AT LAW

*s/ Toni Meacham*
Toni Meacham, WSBA No. 35068
1420 Scooteney Road
Connell, WA 99326
T: 509-488-3289
E: tonipierson@rocketmail.com

VAN NESS FELDMAN LLP

*s/ Duncan M. Greene\**
Duncan M. Greene, WSBA No. 43178
*James P. Grifo\**
James P. Grifo, WSBA No. 45192
1191 Second Avenue, Suite 1800
Seattle, WA 98101
T: 206-623-9372
E: dmg@vnf.com; jgrifo@vnf.com

//
//
//

COMPLAINT - 57

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

1

2

THE LAW OFFICE OF NICHOLAS POWER

3

*s. Nicholas Power**

4

Nicholas Power, WSBA No. 45974

5

3660 Beaverton Valley Rd.

Friday Harbor, WA 98250

6

T: 360-298-0464

E: nickedpower@gmail.com

7

8

*Attorneys for Plaintiffs*

9

*Admissions Forthcoming

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT - 58

1366244

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372